

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LEONARD EARL ROULHAC,

        Petitioner,

v.

UNITED STATES OF AMERICA,

        Respondent.

                Civil No.: 2:13cv54
                Criminal No.: 2:09cr115

## OPINION AND ORDER

This matter is before the Court on Leonard Earl Roulhac's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence, filed pursuant to 28 U.S.C. § 2255. Petitioner's § 2255 motion alleges that his counsel was ineffective for failing to investigate and argue various defenses based on his mental capacity. The government opposes such motion, contending that it is time-barred and that it separately fails on the merits. Having considered the briefs and record, the Court finds that an evidentiary hearing is unnecessary because the materials before the Court conclusively demonstrate that Petitioner is not entitled to the relief sought in his § 2255 motion. See R. Governing § 2255 Proceedings in U.S. Dist. Cts. 8(a). For the reasons discussed below, Petitioner's § 2255 motion is **DISMISSED** and **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

During June and July of 2009, two separate criminal complaints were filed in this Court asserting that Petitioner committed a bank robbery as well as various firearms offenses. After Petitioner was arrested and appointed counsel, his lawyer filed a motion to determine competency as well as notices to rely on the defense of insanity. In response to such notices, the government moved for the evaluation of Petitioner with respect to sanity. The Court granted the motions seeking competency and sanity evaluations, and Petitioner was transferred to a detention facility in Florida where he was evaluated over a period of more than a month. Prior to the start of Petitioner's evaluation period, a grand jury returned an indictment charging Petitioner with thirty-two criminal counts, including robbery of a Walmart, eleven bank robberies or attempted bank robberies, as well as numerous associated firearms offenses. ECF No. 15.

On October 23, 2009, Dr. Lisa B. Feldman of the U.S. Bureau of Prisons Federal Detention Center in Miami, Florida, completed a written psychological report on Petitioner. ECF No. 25. Dr. Feldman's eighteen page sealed forensic evaluation was based on lengthy inpatient observation of Petitioner, several independent tests, a review of some of Petitioner's prior medical records, and a review of Petitioner's telephone conversations during his

evaluation period, including a call on which he stated "I ain't pleading to nothing . . . I'm playin retarded." ECF No. 25, at 16. Dr. Feldman concluded that Petitioner was competent to stand trial and was not insane at the time of the offenses contained in the indictment. Id. at 17. She further concluded that, based on the various psychological test results and inpatient observation, Petitioner was feigning mental defects in an attempt to evade punishment and/or to receive a lesser sentence.[1] Id.

On November 22, 2009, Petitioner's appointed attorney was forced to withdraw from the case based on a conflict of interest, and Petitioner was appointed a new lawyer. On January 8, 2010, the Court held a hearing to determine whether Petitioner was competent to stand trial, at which Petitioner appeared with his new attorney. At that hearing, defense counsel did not challenge Dr. Feldman's findings, and he acknowledged that Petitioner's previous mental evaluation yielding a recommendation of "incompetence" appeared to have only been based on a "one-hour interview" with Petitioner and it relied heavily on "the personal statements of Mr. Roulhac as opposed to independent tests." Hearing Tr. 3, ECF No. 103. Defense counsel was also candid with the Court about his

---

[1] Petitioner's test results suggest that he was trying to fake a mental defect as he provided suspect answers to questions that are rarely given by those with legitimate mental defects. ECF No. 25, at 16.

personal interactions with Petitioner, stating: "I've talked to my client, and based on my observations, I believe that he's, he does understand the nature of the proceeding against him, he has been able to assist me in his defense . . . ." Id.

Although defense counsel had requested an evaluation of Petitioner's competency, and had followed the proper procedural steps to pursue an insanity defense at trial, defense counsel ultimately chose not to pursue any defense based on mental defect. Rather, at trial, the defense argued that the government had insufficient evidence to prove Petitioner's guilt. Such defense was supported by the fact that several of the eye-witnesses to the various robberies were not able to identify Petitioner as the robber/attempted robber.

At the conclusion of Petitioner's five-day jury trial, the jury returned a verdict finding Petitioner guilty on all counts pursued by the government at trial. ECF No. 70. Petitioner was later sentenced to over two hundred years imprisonment, a sentence driven primarily by the statutorily mandated consecutive sentences on the numerous firearm counts. ECF No. 83. Petitioner timely appealed his convictions, and on October 26, 2011, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") affirmed his convictions by unpublished per curiam opinion. ECF No. 109. Petitioner subsequently filed a petition for writ of certiorari in the

Supreme Court of the United States ("Supreme Court"). The Supreme Court denied such petition on January 17, 2012. Roulhac v. United States, 132 S. Ct. 1128 (2012).

On January 28, 2013, the United States District Court for the Northern District of West Virginia received Petitioner's § 2255 motion. ECF No. 119. The West Virginia district court, the incorrect court in which to file, forwarded Petitioner's motion to this Court, and it was filed "subject to defect" by the Clerk of this Court on January 31, 2013. Id. The defect noted by the Clerk was the fact that Petitioner had not himself signed the motion, but it was instead signed and submitted by an unidentified individual asserting to be Petitioner's "next friend."[2] The final typed page of the § 2255 motion indicates, purportedly under penalty of perjury, that the motion was placed in the prison mailing system on January 16, 2013. Id.

On April 22, 2013, the government filed a brief in opposition to Petitioner's § 2255 motion. The government both challenged the timeliness of Petitioner's motion and alternatively argued that it fails on the merits. On May 14, 2013, Petitioner filed a reply brief, this time with the assistance of counsel, and argued: (1) that the initial motion

---

[2] It appears from the context of the § 2255 motion and the markings on the envelope used to mail it that one of Petitioner's fellow inmates prepared such motion and placed it in the prison mailing system at the United States Penitentiary in Hazelton, West Virginia. ECF No. 119.

was timely; (2) if deemed untimely, the limitations period should be equitably tolled; and (3) that the motion presents a meritorious argument demonstrating ineffective assistance of counsel.

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner bears the burden of proving that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." Id. A petitioner must prove the asserted grounds for relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing . . . the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion." Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that collaterally attacks a sentence or conviction

through the filing of a new proceeding, as contrasted with a direct appeal. See In re Jones, 226 F.3d 328, 332-33 (4th Cir. 2000) ("'[Section] 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" (quoting Davis v. United States, 417 U.S. 333, 343 (1974))). The existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). On the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1981). Accordingly, a § 2255 collateral challenge "may not do service for an appeal." Id. at 165.

A freestanding claim of ineffective assistance of counsel is properly asserted for the first time in a § 2255 motion. See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). Such rule exists because the Federal Rules Governing § 2255 Proceedings permit

expansion of the record, which is generally unavailable on direct appeal and often necessary to properly resolve an ineffective assistance claim. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010); see United States v. Allen, 491 F.3d 178, 191 (4th Cir. 2007) (indicating that ineffective assistance of counsel claims "are normally raised before the district court via 28 U.S.C. § 2255").

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has interpreted the right to counsel as providing a defendant "'the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)) (emphasis added). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. Id. at 687-88. "[U]nsubstantiated and largely conclusory statements" are insufficient to carry a petitioner's burden as to the two prongs of the Strickland test. United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005).

When evaluating counsel's performance under the first prong of Strickland, courts "must be highly deferential." Strickland, 466 U.S. at 689; see Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986) (discussing the "highly demanding" Strickland standard). To establish constitutionally deficient performance, a petitioner must demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. Courts should therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

In conducting a hindsight evaluation of counsel's performance, a court must recognize that there "are countless ways to provide effective assistance in any given case" and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id. The difficulty in overcoming the general presumption that defense counsel provided effective assistance is even greater where counsel's actions

required a strategic "assessment and balancing of perceived benefits against perceived risks." United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004). Such strategic decisions must be afforded "'enormous deference.'" Id. (quoting United States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994)). Accordingly, "[o]nce counsel conducts a reasonable investigation of law and facts in a particular case, his strategic decisions are 'virtually unchallengeable.'" Powell v. Kelly, 562 F.3d 656, 670 (4th Cir. 2009) (quoting Strickland, 466 U.S. at 690).

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the Petitioner fails to prove either of the two prongs of the Strickland test, the Court need not evaluate the other prong of the test. United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004).

### III. DISCUSSION

#### A. Timeliness/Validity of § 2255 Motion

The government first argues that Petitioner's § 2255 motion should be denied because Petitioner filed the instant motion after the expiration of the one-year statute of limitations.

See 28 U.S.C. § 2255(f). The one year limitations period starts running on the latest of four operative dates: the "date on which the judgment of conviction becomes final," the date on which certain government created impediments to filing are removed, the date on which a new retroactive right has been recognized by the Supreme Court, or the date on which previously undiscoverable facts supporting the claim could be discovered. Id. Here, Petitioner relies on the date his convictions became final, which occurred on January 17, 2012 when the Supreme Court denied his petition for a writ of certiorari. Clay v. United States, 537 U.S. 522, 527 (2003).

The portions of the parties' briefs addressing the timeliness of Petitioner's motion assume that the motion was "filed" on January 28, 2013, the date it mistakenly arrived in the United States District Court for the Northern District of West Virginia.[3] However, based on the prison mailbox rule adopted by the Supreme Court, a pro se prisoner is credited with filing a habeas petition on the day it is placed into the prison mailing system, not on the day it arrives and is filed in a district court. Houston v. Lack, 487 U.S. 266, 270-72 (1988). The Fourth Circuit recently reiterated the purpose behind the

---

[3] As explained by the Fourth Circuit in United States v. McNeill, 523 F. App'x 979 (4th Cir. 2013), federal statute provides that an action filed in the wrong district court shall be transferred to a proper district and shall proceed as if it was filed in the proper court on the date that it was actually filed in the improper court. Id. at 982 (citing 28 U.S.C. § 1631).

prison mailbox rule, noting that "[t]he foundational rationale for the prison mailbox rule is that a prisoner should not be held accountable for the handling of his mail where he has no control." United States v. McNeill 523 F. App'x 979, 982 (4th Cir. 2013) (citing Houston, 487 U.S. at 271).

Under the Federal Rules governing § 2255 cases, a prisoner can demonstrate that a motion was timely filed via "a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement . . . ." R. Governing § 2255 Proceedings in U.S. Dist. Cts. 3(d). Here, Petitioner's § 2255 stated, in conformity with 28 U.S.C. § 1746: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on January 16, 2013." ECF No. 119.

As explained by the Fourth Circuit in McNeill, determining whether the mailbox rule should apply in a particular case is a factual inquiry involving shifting burdens. McNeill, 523 F. App'x at 982-83. The petitioner has the initial burden of showing the mailbox rule should apply by one of the methods outlined in Rule 3(d). Id. If this burden is met, the burden then shifts to the government to demonstrate that the mailbox rule should not apply, which could be proven, among other ways,

by the introduction of the outgoing "mail log" from the prison facility housing the petitioner.  Id.

Here, had Petitioner himself signed the § 2255 motion, he clearly would have met his initial burden.  Moreover, because the government has not introduced any contrary evidence, nor requested that the Court authorize discovery, it appears that the government has not rebutted any initial showing.[4]  However, because Petitioner did not sign his § 2255 motion, the Court must consider the effect of the signature on such filing by an unidentified "next friend."[5]

Initially, the Court recognizes that the law expressly permits a "next friend" to file a § 2255 motion on behalf of a petitioner that is unable to do so himself.  See R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 2(b) (indicating that a § 2255 motion must "be signed under penalty of perjury by the movant or by a person authorized to sign it for the movant") (emphasis

---

[4] Here, as an alternative to introducing a prison mail log, it appears that the government could have sought an affidavit from an appropriate prison official explaining the stamped date on the envelope that contained Petitioner's § 2255 motion, as the stamp reads as follows: "01-24-13 07:29 RCVD."  If such stamp was applied by a prison official at Petitioner's facility when the letter was first received, Petitioner's motion would be untimely.

[5] Upon initial review of this issue, the Court was inclined to hold that Petitioner's § 2255 was timely filed because the government failed to challenge the validity of the filer's "next friend" status. However, an independent review of the relevant law convinced the Court that, in order to ensure that the Court has jurisdiction over the filing, an issue plainly appropriate for sua sponte consideration, the "burden is on the 'next friend' clearly to establish the propriety of his status and thereby justify the jurisdiction of the court." Whitmore v. Arkansas, 495 U.S. 149, 163-64 (1990) (emphasis added).

added); 28 U.S.C. § 2242 ("Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended <u>or by someone acting in his behalf</u>.") (emphasis added). However, the Supreme Court and Fourth Circuit have both adopted a strict test for determining the validity of asserted next friend status. As stated by the Supreme Court:

> "[N]ext friend" standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another. Decisions applying the habeas corpus statute have adhered to at least two firmly rooted prerequisites for "next friend" standing. First, a "next friend" <u>must provide an adequate explanation—such as</u> inaccessibility, <u>mental incompetence</u>, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the "next friend" must be <u>truly dedicated to the best interests</u> of the person on whose behalf he seeks to litigate, and it has been further suggested that a "next friend" must have some significant relationship with the real party in interest. <u>The burden is on the "next friend" clearly to establish the propriety of his status and thereby justify the jurisdiction of the court.</u>

<u>Whitmore v. Arkansas</u>, 495 U.S. 149, 163-64 (1990) (emphasis added) (internal citations omitted). Although the Supreme Court's opinion in <u>Whitmore</u> did not expressly find that there must be a "significant relationship" between the next friend and the real party in interest, the Fourth Circuit subsequently concluded that there must be such a relationship. <u>See</u> <u>Hamdi v. Rumsfeld</u>, 294 F.3d 598, 604 (4th Cir. 2002) ("[H]aving considered the relevant case law and the arguments of counsel,

14

we conclude that the significant-relationship inquiry is in fact an important requirement for next friend standing"). Additionally the Fourth Circuit has instructed that "[t]he question of next friend standing is not merely 'technical,' . . . [r]ather, it is jurisdictional and thus fundamental." Id. at 607.

Applying such test, here, the Court finds that it lacks jurisdiction over the instant § 2255 motion because the unidentified filer has failed to demonstrate his standing to file as a next friend. First, and most glaringly, the purported next friend has not even revealed his identity, making it virtually impossible for him to satisfy the standing requirements. Second, although Petitioner's mental incapacity is asserted as a basis for next friend filing, such assertion is conclusory and is not supported by any facts demonstrating that Petitioner lacked capacity at the time his § 2255 was filed. Third, although the claimed filing of the § 2255 motion on the very last day of the limitations period certainly suggests that the filer was acting to benefit Petitioner, such timing is alone insufficient to demonstrate that the purported next friend is "truly dedicated" to Petitioner's best interests. Fourth, this Court has no evidence before it, nor does it even have an unsubstantiated assertion, demonstrating a "significant relationship" between Petitioner and the drafter of the § 2255

15

motion—the motion merely states that the drafter has known Petitioner for about a year and was trying to do "a favor" for Petitioner.[6]

For the above stated reasons, on the current record, the Court has no jurisdiction over the pending § 2255 motion, and it is therefore **DISMISSED**. Although, in other circumstances, this Court may have provided the purported next friend the opportunity to file a supplemental affidavit or other materials in an effort to justify his or her next friend status, here: (1) the purported next friend has not even identified himself/herself by name, making it impossible for the Court to request a supplemental filing; and (2) even if an identity had been provided, as discussed below, the currently pending § 2255 motion alternatively fails on the merits. Accordingly, it would be futile for the Court to take the steps necessary to attempt to learn the identity of the filer and seek supplemental information.

### B. Merits of the Ineffective Assistance Claim

Alternative to the reasons for dismissing the pending § 2255 motion for lack of jurisdiction, Petitioner's motion is

---

[6] Similar to the facts before the Fourth Circuit in Hamdi, the instant facts do not suggest that Petitioner "has no significant relationships" with any person because the § 2255 motion asserts that Petitioner's mother knows more about his mental issues than anyone else, suggesting that she could have acted as his next friend. See Hamdi, 294 F.3d at 606 (recognizing that Hamdi's father appeared available to file a next friend petition on Hamdi's behalf).

denied on its merits. Although such motion includes six numbered arguments, reviewing its substance, as well as the more clearly written reply brief, it appears that Petitioner's collateral challenge to his convictions in actuality asserts one primary argument—that counsel was ineffective for failing to sufficiently investigate Petitioner's mental condition and that such an investigation would have revealed Petitioner's incompetence to stand trial and/or would have revealed facts supporting a defense based on coercion/diminished capacity.

## 1.

The failure of defense counsel to investigate the possibility of a defense based on mental defect has, under certain circumstances, been held to constitute constitutionally deficient performance. For example, in Wood v. Zahradnick, 578 F.2d 980, 981-82 (4th Cir. 1978), the Fourth Circuit held that defense counsel's complete failure to investigate the possibility of an insanity defense, considering the gruesome nature of the crime the defendant committed, amounted to ineffective assistance of counsel. The evidence in Wood clearly showed that the defendant had raped and beaten his 67-year-old neighbor whom he had known since childhood. Id. Despite the overwhelming evidence against him, the defendant in Wood claimed not to remember the incident at all. Id. There was also evidence that the defendant had been under the influence of

heroin and alcohol while committing the crime and defense counsel's notes revealed that the defendant was not always responsive during the initial interview. Id. Despite these facts, defense counsel did not even request a mental evaluation of the defendant or otherwise investigate any defense based on mental defect. The Wood court concluded that the information possessed by defense counsel, particularly when considered in light of the lack of any other valid defense, should have led defense counsel to at least investigate the possibility of a mental defect defense, and because he did not, counsel provided ineffective assistance. Id.; see Hooper v. Garraghty, 845 F.2d 471, 473-74 (4th Cir. 1988) (holding that, in light of defense counsel's knowledge that the defendant "might have an insanity defense and that, realistically, he had no other defense," counsel was ineffective for failing to obtain "a psychiatric evaluation of [the defendant's] mental condition at the time he committed the crimes").

In contrast to the above, the Supreme Court has recognized that not every case calls for the investigation into a defendant's mental state as our legal system "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In Knowles, the defendant argued in his habeas motion that his trial counsel was

ineffective for recommending the withdrawal of an insanity defense. Id. at 123-26. The Supreme Court rejected such argument and affirmed the lower court's finding that defense counsel's decision not to pursue an insanity defense was reasonable because the attorney had carefully considered the defense and determined that "it stood almost no chance of success." Id.

Courts in the Fourth Circuit have similarly concluded that because an attorney cannot investigate all possible defenses, defense counsel need not exhaustively investigate a mental defect defense absent facts necessitating such investigation. Sledge v. Moore, 878 F.2d 1431 (table), 1989 WL 74912, at *1 (4th Cir. June 30, 1989). In Sledge, the Petitioner argued that even though there was a psychiatric report before the Court, such report was "inadequate" and defense counsel should have pursued a "complete psychiatric examination." Id. The Fourth Circuit rejected such argument, finding that, absent "specific facts suggesting the possibility of an insanity defense," counsel was not ineffective "merely because he failed to further investigate [the petitioner's] mental state." Id. (emphasis added). In line with Knowles and Sledge, in Jackson v. United States, 638 F. Supp. 2d 514, 543 (W.D.N.C. 2009), the district court held that because defense counsel investigated a defense based on mental defect but had a sound reason for not pursuing

such defense at trial, it did not constitute ineffective assistance to abandon such defense.

Here, unlike the facts of Wood, but in-line with the facts of Sledge and Jackson, Petitioner's counsel investigated both the possibility of a defense based on Petitioner's mental capacity at the time of his offenses as well as the possibility of obtaining a ruling from the Court that Petitioner was not even competent to stand trial. Petitioner was evaluated from August until October of 2009 in the Federal Detention Center in Miami, Florida, and a detailed psychiatric report was issued on October 23, 2009. ECF No. 25. The report concluded that Petitioner was competent to stand trial, capable of assisting his attorney in the preparation of his defense, and able to make rational decisions regarding strategies for his legal defense. Id. at 17. The report separately concluded that, based both on the direct observation and testing of Petitioner in Florida, and his prior mental evaluations performed contemporaneously to the crimes, Petitioner was not suffering from a serious mental disorder or defect at the time of the crimes that would have rendered him unable to appreciate the wrongfulness of his behavior. Id. at 18.

Moreover, critical to counsel's defense strategy, the report included evidence that would have undercut any defense based on coercion or diminished capacity because it stated that

Petitioner was "fabricating psychiatric and cognitive impairments on objective testing . . . in an effort to avoid, or receive diminished repercussions for the alleged offense." Id. at 17. Among many other pieces of evidence that defense counsel clearly had a motivation to avoid being presented to the jury was Petitioner's statement during a telephone call that he was "playin retarded" in order to evade punishment. Id. at 16. Because counsel's actions required a strategic "assessment and balancing of perceived benefits against perceived risks," Terry, 366 F.3d at 317, and because counsel investigated Petitioner's mental capacity prior to choosing to advance a defense grounded in challenging the eyewitnesses, counsel's strategic decision is "'virtually unchallengeable.'" Powell, 562 F.3d at 670 (quoting Strickland, 466 U.S. at 690); see Jackson, 638 F. Supp. 2d at 540-43 (concluding that defense counsel's decision not to pursue a "mental health" defense "was a strategic decision by counsel" that did not amount to ineffective assistance in light of the damaging evidence that would have been introduced by the government had such defense been asserted); Yarborough v. Gentry, 540 U.S. 1, 8 (2003) ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect.").

In sum, Petitioner's counsel took the steps necessary to examine whether Petitioner was competent to stand trial, and both the medical evaluation and counsel's personal interactions with his client demonstrated that the Petitioner was competent. Additionally, defense counsel took the necessary procedural steps to pursue an insanity defense, but after obtaining and considering the detailed psychiatric report, he made the reasonable strategic decision that claiming a mental defect at the time of the offenses was unlikely to be successful. Notably, after receiving the detailed psychiatric evaluation, defense counsel knew that any defense based on Petitioner's mental capacity, regardless of whether it was characterized as an "insanity" defense or a "coercion/diminished capacity" defense, would have invited the prosecution to introduce evidence demonstrating Petitioner's direct efforts to feign mental retardation to benefit his criminal case. It therefore appears that, after considering the detailed evaluation, defense counsel "merely recommended the withdrawal of what he reasonably believed [were defenses] doomed to fail." Knowles, 556 U.S. at 124. Accordingly, as mandated by Strickland and subsequent Fourth Circuit precedent, this Court gives heavy deference to counsel's strategic decision not to pursue a defense based on mental impairment. Because such decision avoided the introduction of evidence that would have clearly damaged the

defense's case, Petitioner fails to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

### 2.

In addition to his core argument, Petitioner advances several corollary arguments, contending: (1) that his mental impairment prevented him from assisting at trial; (2) that counsel failed to investigate Petitioner's history of mental disabilities that began at age three; (3) that Petitioner is very impressionable and can be easily coerced into committing crimes; (4) that counsel failed to investigate and determine the identity of the person manipulating Petitioner into committing crimes (although Petitioner cannot himself remember such person's identity); (5) appellate counsel should have advanced the "effective defense" of duress/incompetence; and (6) movant has several other strong arguments, but his mental state precludes him from articulating them. ECF No. 119. For the same reasons discussed above, each of these arguments fails.

First, Petitioner was competent to stand trial and this fact was supported by a lengthy mental evaluation, counsel's interactions with his client, and the Court's observations of Petitioner. Defense counsel's decision not to challenge such

conclusion (at trial or on appeal), as supported by the detailed psychiatric report, was reasonable.

Second, because a diminished capacity defense would be based on Petitioner's mental state "at the time of the commission of the acts constituting the offense," 18 U.S.C. § 17, it was reasonable for defense counsel not to investigate every one of Petitioner's purported past diagnoses, particularly in light of his very recent, and very detailed, inpatient evaluation. See Strickland, 466 U.S. at 690-91 ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."). In light of the record evidence, a diminished capacity defense was also unlikely to succeed on appeal, either as a direct challenge or as a challenge to trial counsel's effectiveness. See Lawrence v. Branker, 517 F.3d 700, 709 (4th Cir. 2008) (indicating that, on appeal, the presumption of ineffective assistance is typically overcome "only when ignored issues are clearly stronger than those presented") (quotation marks and citation omitted); United States v. Gastiaburo, 16 F.3d 582, 590 (4th Cir. 1994) (indicating that ineffective assistance claims are most appropriately filed through a § 2255 motion and will only be successful on direct appeal if it "conclusively appears from the record that defense counsel did not provide effective

representation") (quotation marks and citation omitted).  Third, a diminished capacity or coercion defense would have opened the door to the same damaging evidence regarding Petitioner's malingering, and counsel was thus clearly reasonable in making the strategic decision not to pursue such defense.  It is also notable that a duress/coercion defense would likely have been undercut by the fact that Petitioner was alleged to have committed, and was later convicted of, twelve separate robberies/attempted robberies over a five month period.  In sum, all of Petitioner's arguments challenging trial counsel or appellate counsel's failure to perform further investigation and/or failure to advance mental defect defenses fail because counsel's conduct was both strategic and reasonable in light of the record evidence.  Therefore, Petitioner fails to demonstrate constitutionally deficient performance as to his related, but largely undeveloped, claims.

### 3.

Petitioner also fails the second prong of the Strickland test as he fails to demonstrate that counsel's performance caused him prejudice.  Strickland, 466 U.S. at 691.  Such failure applies to all of the arguments set forth in Petitioner's § 2255 motion.

First and foremost, Petitioner has failed to introduce any psychiatric reports, or other evidence, indicating that he had a

25

mental defect at the time of his trial, or at the time of the multiple robberies and attempted robberies, that would have provided a viable defense in this case. Second, a review of the detailed October 2009 psychiatric report suggests that it is highly unlikely that Petitioner would have succeeded in a mental capacity defense had it been raised by his lawyer. Even if the Court assumes that a different lawyer would have located an expert to opine that Petitioner was insane, or otherwise lacked the mental capacity to commit the offenses, such opinion would clearly have been assailable based on the direct evidence that Petitioner had very recently feigned being mentally "retarded" in order to avoid punishment for his crimes. Moreover, any defense expert would likely have had far less time to observe Petitioner than the long-term inpatient observation that occurred prior to the issuance of the October 2009 psychiatric report. It therefore appears unlikely that a jury would have believed that Petitioner did not again feign incompetence or insanity during any evaluations performed by a defense expert.

Accordingly, in light of Petitioner's failure to introduce any new evidence revealing his incompetence/insanity/mental defect, and in light of the damaging evidence already in the record, Petitioner has failed to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Strickland, 466 U.S. at 693-94; see Hooper, 845 F.2d at 474 (concluding that even though defense counsel's performance was constitutionally deficient for failing to obtain a psychiatric evaluation of the defendant's mental condition at the time of the offenses, the defendant nevertheless failed to satisfy Strickland's prejudice prong because he did not demonstrate a "reasonable probability that if his lawyers had obtained a psychiatric report" there would have been a different outcome, noting that the record demonstrated "serious obstacles" to succeeding on an insanity defense). Petitioner's failure to affirmatively prove prejudice, provides an independent basis for the denial of his § 2255 motion.

## IV. CONCLUSION

As discussed above, Petitioner's § 2255 motion is **DISMISSED** for lack of jurisdiction because the motion was filed by someone other than Petitioner, and the unidentified filer failed to demonstrate standing to file as Petitioner's "next friend." Alternatively, Petitioner's motion is **DENIED** on the merits because he fails to demonstrate that he received constitutionally deficient performance, or that he suffered prejudice as a result of counsel's purported deficiencies.

Finding that the procedural basis for dismissal of Petitioner's § 2255 motion is not debatable on this record, and alternatively finding that Petitioner has not made a

"substantial showing of the denial of a constitutional right," a certificate of appealability as to Petitioner's § 2255 motion is **DENIED**.  28 U.S.C. § 2253(c)(2); see R. Governing § 2255 Proceedings in U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a).  If Petitioner intends to seek a certificate of appealability from the Court of Appeals, he must forward a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510, within sixty (60) days from the date of this Order.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Order to Petitioner, Petitioner's former counsel, and the United States Attorney's Office in Norfolk, Virginia.

**IT IS SO ORDERED.**

/s/ _____

_____
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 30, 2014